## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | ss: Bridgeport, Connecticut |
| COUNTY OF FAIRFIELD | **FILED UNDER SEAL** |
| | October 7, 2020 |

## AFFIDAVIT

I, Jordan Oliveira, being duly sworn, depose and state as follows:

## BACKGROUND OF AFFIANT

1. I have been employed as a Special Agent ("SA") of U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), since 2010, and am currently assigned to the HSI Office of the Resident Agent in Charge in New Haven, Connecticut. While employed by HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training at the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ICE-HSI Special Agent Training course and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have personally participated in the investigation concerning the violation of the federal laws listed in this affidavit.

3. I make this affidavit in support of a Criminal Complaint and Arrest Warrant

charging Kevin Curley ("CURLEY") (DOB: \*\*/\*\*/1980) with receipt of child pornography in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1) and possession of child pornography in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2) (collectively, the "TARGET OFFENSES").  Based on the facts set forth below, I believe there is probable cause to believe, and I do believe, that CURLEY knowingly committed the TARGET OFFENSES in the District of Connecticut.

4. The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement, my own investigation to include personal observations, documents and other investigative materials which I have reviewed, as well as my training and experience as a Special Agent with HSI.  Since this affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that CURLEY committed the TARGET OFFENSES.

## STATUTORY AUTHORITY

5. This investigation concerns possible violations of Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1) (receipt of child pornography) and Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2) (possession of child pornography).

6. Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce

2

shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

7. Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## **BACKGROUND ON TOR AND THE "DARK WEB"**

8. The Internet is a global network of computers and other devices. Devices directly connected to the Internet are uniquely identified by IP addresses, which are used to route information between Internet-connected devices. Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response. On the Internet, data transferred between devices is split into discrete packets, each of which has two parts: a header with non-content routing and control information, such as the packet's source and destination IP addresses; and a payload, which generally contains user data or the content of a communication.

9. "Tor," which is an acronym for "The Onion Router," is a special network of computers on the Internet, distributed around the world, that is designed to conceal the true IP addresses[1] of the computers on the network, and, thereby, the identities of the network's users.

---

[1] Every computer device connected to the Internet has an "Internet protocol" or "IP" address

The Tor network attempts to create this anonymity by routing Tor user communications through a globally distributed network of relay computers, along a randomly assigned path known as a "circuit." Because of the way the Tor network routes communications through the relay computers, traditional IP address-based identification techniques are not effective. To access the Tor network, a user must install Tor software. That is most easily done by downloading the free "Tor browser" from the Tor Project, the private entity that maintains the Tor network, via their website at www.torproject.org. The Tor browser is a web browser that is configured to route a user's Internet traffic through the Tor network.

10. As with other Internet communications, a Tor user's communications are split into packets containing header information and a payload, and are routed using IP addresses. In order for a Tor user's communications to be routed through the Tor network, a Tor user necessarily (and voluntarily) shares the user's IP address with Tor network relay computers, which are called "nodes." This routing information is stored in the header portion of the packet. As the packets travel through the Tor network, each node is able to see the address information of the previous node the communication came from and the next node the information should be sent to. Those Tor nodes are operated by volunteers – individuals or entities who have donated computers or computing power to the Tor network in order for it to operate.

11. Tor may be used to access open-Internet websites like www.justice.gov. Because a Tor user's communications are routed through multiple nodes before reaching their destination, when a Tor user accesses such an Internet website, only the IP address of the last relay computer

---

assigned to it, which is used to route Internet traffic to or from the device. A device's IP address can be used to determine the device's physical location and, thereby, its user.

(the "exit node"), as opposed to the Tor user's actual IP address, appears on that website's IP address log.  In addition, the content of a Tor user's communications are encrypted while the communication passes through the Tor network.  That can prevent the operator of a Tor node from observing the content (but not the routing information) of other Tor users' communications.

12. The Tor Project maintains a publicly available frequently asked questions (FAQ) page, accessible from its website, with information about the Tor network.  Within those FAQ, the Tor Project advises Tor users that the first Tor relay to which a user connects can see the Tor user's actual IP address.  In addition, the FAQ also cautions Tor users that the use of the Tor network does not render a user's communications totally anonymous. For example, in the Tor Project's FAQ, the question "So I'm totally anonymous if I use Tor?" is asked, to which the response is, in bold text, "No."

13. The Tor Network also makes it possible for users to operate or access websites that are accessible only to users operating within the Tor network.  Such websites are called "hidden services" or "onion services."  They operate in a manner that attempts to conceal the true IP address of the computer hosting the website.  Like other websites, hidden services are hosted on computer servers that communicate through IP addresses.  However, hidden services have unique technical features that attempt to conceal the computer server's location.

14. Unlike standard Internet websites, a Tor-based web address is comprised of a series of either 16 or 56 algorithm-generated characters, for example "asdlk8fs9dflku7f," followed by the suffix ".onion."  Ordinarily, investigators can determine the IP address of the computer server hosting a website (such as www.justice.gov) by simply looking it up on a publicly available Domain Name System ("DNS") listing.  Unlike ordinary Internet websites, however, there is no

publicly available DNS listing through which one can query the IP address of a computer server that hosts a Tor hidden service. So, while law enforcement agents can often view and access hidden services that are facilitating illegal activity, they cannot determine the IP address of a Tor hidden service computer server via public lookups. Additionally, as with all Tor communications, communications between users' computers and a Tor hidden service webserver are routed through a series of intermediary computers. Accordingly, neither law enforcement nor hidden-service users can use public lookups or ordinary investigative means to determine the true IP address – and therefore the location – of a computer server that hosts a hidden service.

## THE INVESTIGATION AND PROBABLE CAUSE

15. In February 2020, HSI began investigating CURLEY based upon information that a user of the internet at CURLEY's residence at ▬▬▬▬ Morris, Connecticut, was accessing an online community of individuals who regularly send and receive child pornography via a hidden service website that operated on the Tor anonymity network.

16. As part of HSI's investigation of the above information, on February 28, 2020, the Honorable William I. Garfinkel, United States Magistrate Judge for the District of Connecticut authorized the installation and use of a pen register and trap and trace device to record, decode and capture all dialing, routing addressing and signaling information associated with the residential internet service account for ▬▬▬▬ in Morris, Connecticut. Analysis of the data revealed evidence that an internet user at CURLEY's residence had approximately 475 connections to IP addresses identified as Tor network relay computers, which as discussed above, indicate that the user was accessing Tor on each of those occasions.

17. On July 31, 2020, Judge Garfinkel issued a federal search and seizure warrant for

6

CURLEY's residence in Morris.  I was the affiant in the application for that search warrant.

19. On August 5, 2020, HSI agents, including myself, executed the warrant at ▮▮▮▮▮▮.  During the execution of that warrant, HSI agents seized a Dell XPS Tower computer that was located within the living room of the residence.

19. On or about August 6, 2020, an HSI Computer Forensic Agent ("CFA") began a forensic examination of the computer's hard drive.  I have reviewed the files recovered from the forensic examination.  Among the files recovered from the computer's hard drive, as set forth in greater detail below, HSI recovered a concealed access point to a Tor browser accompanied by a media player and two video files containing child pornography, along with an image cache and browser history containing approximately 148 additional unique images of child pornography that had been previously accessed by a user of the computer.

## Hidden Tor Network Access Point

20. During a cursory review of the computer seized from CURLEY's residence, HSI was unable to locate a Tor browser or dark web access point from within the list of installed applications.  However, during the subsequent forensic examination, HSI located an access point to the Tor browser, specifically a shortcut key that had been hidden inside of a folder entitled "Soundtrack of Tangled (2010)" that had been saved within the file path C:\Users\Kevin\Downloads.  According to computer metadata, the shortcut key to the Tor browser was created on June 13, 2019 at approximately 1:33 a.m. Eastern Standard Time ("EST") and last accessed on August 3, 2020 at approximately 10:57 p.m. EST.  Your affiant understands the "Soundtrack of Tangled (2010)" to refer to music from a popular animated children's movie, however, no audio files (or other files for that matter) related to this movie were located within the

folder. Instead, HSI located the Tor browser shortcut, along with a VLC media player, which I understand can be used to play audio and video files, and a 7-Zip file archiving software, which I understand can be used to extract large compressed files such as videos and can also be used to decrypt password protected archive files.

21. The location of the Tor browser, media player and 7-Zip file archiving software in this folder structure, as opposed to being located on the desktop or with the other installed applications, suggests that Tor access and the related programs were hidden such that it would not be immediately accessible to someone who sat down at the computer unless they knew where to look.

22. Further, the fact that the media player and 7-Zip file archiving software were maintained within the same series of folders as the Tor access point suggests that these tools were being used together with the Tor browser to view files, to include two child pornography videos saved to that location.

### Two Video Files Containing Child Pornography

23. Located within the 7-Zip archiving software folder inside the "Soundtrack of Tangled (2010)" folder of the computer's hard drive, HSI located a video file entitled ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that runs approximately 6 minutes and 54 seconds. The video appears to show a nude, prepubescent male approximately 6 to 9 years old, kneeling on a bed next to a clothed adult male. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ perform oral sex on the adult male. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

████████████████. According to metadata, this video file was created (i.e. downloaded) on July 21, 2019 at approximately 1:09 a.m. EST and was last accessed on July 26, 2020 at approximately 1:41 p.m. EST.

24. Also within the 7-Zip folder, in a different series of sub-folders, HSI located a second video file entitled ████████████████████████████ that runs approximately 19 minutes and 17 seconds. The video file appears to show a young male, approximately 11 years old, in restraints being forced to perform oral sex on two adult males. ████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ According to metadata, this file was created (i.e. downloaded) on July 21, 2019 at 1:33 a.m. EST and was last accessed on July 26, 2020 at 1:41 p.m. EST.

### Evidence of Previously Accessed Child Pornography

25. In addition to the two video files, HSI located thumbnails for approximately 148 unique images and videos of child pornography present at one time on the computer's hard drive. These images were located within the computer's Windows Explorer ThumbCaches, which I understand is a function of Microsoft Windows that essentially captures a thumbnail of any graphic, document, or movie file that has been saved to the computer's hard drive, even if the file itself is eventually removed or otherwise deleted from the computer's hard drive. In this case, a

9

forensic review of the computer's hard drive indicates that while the original 148 images had been removed from the computer's hard drive, the computer retained the thumbnail views. Among the 148 images containing child pornography, law enforcement observed the following:

    a. One image of a prepubescent female, approximately 4 to 6 years old with an adult ███████████████████████;

    b. One image of a prepubescent female, approximately 4 to 5 years old, holding an adult ███████████████████████ ████;

    c. One image of a prepubescent female, approximately 4 to 6 years old ████ ███████████████████████;

    d. One image of a naked adult male ███████████████████████ ███████████ of a 2- or 3-year old girl or boy, ████████ ████████████████

26.    HSI was also able to obtain an activity "timeline" for the computer's hard drive, which provided investigators with a chronology of visited websites, viewed files and images, among other things, while the computer is in use. Within this timeline, investigators observed a series of file names and file paths associated with child pornographic material that had been accessed by a user of the computer, all of which were previously stored in the "Soundtrack of Tangled (2010)" folder, including:

    a. A file path named ██████████████████ created on March 25, 2019 at approximately 8:26 a.m. EST;

    b. A video file named ███████████████████████

        ▇▇▇▇▇▇▇▇ created on May 23, 2019 at 11:49 p.m. EST;

   c. A file path named ▇▇▇▇▇▇▇▇ created on April 11, 2019 at 9:21 a.m. EST;

   d. A file path named ▇▇▇▇▇▇▇▇ created on April 29, 2019 at 9:00 a.m. EST;

   e. A series of file path named ▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇ created on May 23, 2019 at approximately 11:49 p.m. EST.

27. As discussed in further detail below, based on my training and experience and knowledge of this investigation, I was able to determine that the above-referenced files would have likely contained child pornography and would have been available to the computer's user through a specific Tor website, ▇▇▇▇▇▇▇▇ that appears in the computer's browser history.

### Evidence of Four Tor-Based Child Pornography Websites Accessed from CURLEY's Computer

28. In addition, HSI located at least four different Tor-based web addresses known to contain child pornography within the browser history for the computer, confirming earlier indications from the pen register and trap and trace device that the computer was being utilized to access Tor.

29. The first three web addresses, based on my training and experience and consultation with other law enforcement investigators, would have routed Tor users to a dark net website known as ▇▇▇▇▇▇▇▇ which contained child exploitive materials, including child pornography. However, at the time of the search of the computer's hard drive, the dark net website ▇▇▇▇▇▇▇▇ had already been shut down and the links are no longer active.

30. The fourth Tor-based web address, based on my own investigation, continues to be

11

operational. Specifically, when placed in the Tor browser, the fourth Tor-based web address found on the computer directs the user to a website entitled ▮▮▮ which then directs the user to a second ▮▮▮ website requiring a login that describes itself as ▮▮▮ and includes chat forums providing images and videos of children of all ages being raped and tortured, along with forums describing how to avoid law enforcement detection and setting forth rules that include ▮▮▮

31.     Contents of these forums were compared with the file names located within the "timeline" of the computer's hard drive and several matches were found. For example, a file path previously located within the "Soundtrack of Tangled (2010)" entitled ▮▮▮ was searched for within the ▮▮▮ forum, which revealed a post referencing a the video series chronicling a 6- to 8-year old female engaging in various sex acts with an adult male. Similarly, a file path previously located within the "Soundtrack of Tangled (2010)" entitled ▮▮▮ was searched for within ▮▮▮ and revealed a chat string wherein a forum member posted a collection of videos showing a 5-year old female engaging in sexual acts with an adult male.

### Evidence of Kevin CURLEY's Computer Usage

32.     Based on my review of numerous public records, I understand both CURLEY and his wife to reside at ▮▮▮ in Morris, CT with their three small children, ages 7, 6, and 4.

33.     According to a source of information ("SOI") within the community, CURLEY is a stay-at-home father, while his wife works outside the home. A review of records maintained by the State of Connecticut identify CURLEY as the registered owner of Breakaway Sports Event Management LLC, with his home address at ▮▮▮ listed as his business address.

Records obtained from the Department of Labor for 2019 confirm no wage records for CURLEY and wage records for CURLEY's wife showing employment out of the home. The SOI further informed investigators that CURLEY's wife's work schedule appears to require her to leave early in the morning for work and return in the evening after the two older children return from school.

34. At the time of the execution of the search warrant and seizure of the computer at CURLEY's residence, his wife, who was present at the time, advised law enforcement that nobody beyond herself and CURLEY and their children resided at the residence in the last year, and that they had had no recent visitors who would be using the internet.

35. A forensic review of activity on CURLEY's computer reveals internet activity attributable to CURLEY occurring at the same time as the download and accessing of child pornography. For example, leading up to the download of the two child pornography videos described above, which occurred on July 21, 2019 between 1:00 and 1:30 a.m. EST, the computer user accessed the following:

    a. Internet activity linked to CURLEY's iPage, which I understand to be a service that helps users build their own websites;

    b. Internet activity on the morrisctdems.org website, for which CURLEY ran as a candidate for first selectman in Morris in November 2019;

    c. Internet activity on the Bunker Hill Sports Association, where I understand based on publicly available information that CURLEY is a children's sports team coach; and

    d. Internet activity for the U.S. Soccer Learning Center login page, consistent with my understanding that CURLEY is involved in youth soccer coaching activities.

36. As described above and as observed in the course of my investigation, Tor activity and the accessing and downloading of child pornography on CURLEY's computer hard drive occurs during daytime working hours when CURLEY's wife and older children appear to be out of the home, and in the middle of the night when family members would likely be sleeping.

14

## **CONCLUSION**

37. Based upon the foregoing, there is probable cause to believe, and I do believe that Kevin CURLEY committed violations of Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1) (Receipt of Child Pornography) and 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography) as set forth herein, and therefore I respectfully request the issuance of the specified criminal complaint and arrest warrant.

JORDAN P OLIVEIRA
Digitally signed by JORDAN P OLIVE RA
Date: 2020.10.06 19:01:14 -04'00'

Jordan Oliveira
Special Agent
Homeland Security

The truth of the foregoing affidavit has been attested to me by HSI Special Agent Jordan Oliveira over the telephone on this _____ day of October, 2020 in accordance with the requirements of Fed. R. Crim. P. 4.1.

/s/ William I. Garfinkel, USMJ

HON. WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE